FILED
JAN 30 2023
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Civil Action No. 1:22-cv-1160

In the United States District Court For the Eastern District Of VIRGINIA

Benjamin Carter #1591524

V.

Beth Cabell, Kevin McCoy, Joshua Branch, Harold Clarke, John Doe(s) (all sued in their Individual and Official Capacities); Commonwealth Of Virginia (sued pursuant to State Torts Claims)

# Amended Complaint

A. Jurisdiction and Venue

1. This is a Civil Action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declatory relief pursuant to 28 U.S.C. section 2202 and 2201. Plaintiff's claims for injunctive releif are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the federal Rules Of Civil Procedure. The court has supplemental jurisdictional authority over plaintiff's state law claims under 28 U.S.C. section 1367.

2. The Eastern District Of Virginia is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occured.

B. Plaintiff

1. Benjamin Carter #1591524 is and was at all times a prisoner at Sussex Complex State Prison (SCSP) mentioned herein this complaint.

C. Defendants

1. Beth Cabell is the lead Warden for SCSP, who at all times mentioned in this complaint is legally responsible for the overall Welfare and Operations of employees and prisoners housed at SCSP.

2. Kevin McCoy is the Warden at Sussex I State Prison (SISP), who at all times mentioned in this complaint is legally responsible for the overall Welfare and Operations of employees and prisoners housed at SISP.

3. Joshua Branch is the Unit Manager (UM) of Housing Unit (HU)-3 at SISP, who at all times mentioned in this complaint is legally responsible for the overall Welfare and Operations of employees and prisoners housed in HU-3 at SISP.

4. Harold Clarke is the Director of the Virginia Department Of Corrections (VDOC) who at all times mentioned in this complaint is legally responsible for the overall Welfare and Operations of employees

and prisoners housed throughout the VDOC, at all facilities.

5. John Doe(s) are unknown at this time and at all times are employees of the VDOC.

6. Commonwealth Of Virginia is legally responsible for the Neglegent acts done by the VDOC employee's that are mentioned herein at SCSP.

D. Facts

1. I was sentenced by Newport News Circuit Court to serve 9 years active in the VDOC in April 2018, release 2024.

2. I was transferred to the VDOC in June 2018, to Nottoway Correctional Center under the personal Welfare of Harold Clarke (Clarke), in which he received my mental health and Medical Records that stated that I was a "Severe Mental Ill" (SMI) prisoner diagnosed w/ Paranoia - Anxiety - Depression - Phycosis - Attention Deficit - Disorder(s), Sheizophrenia, and Post-Traumatic Stress Disorder (PTSD), with a treatment plan and Mental Health Medications that I have taken since 2016.

3. I was receiving my "SMI" accomodations at Greensville.

Correctional Center, River North Correctional Center, and for my initial placement at Red Onion State Prison (ROSP) up until May 19, 2020 and was placed in the "Level Segregation Restorative Housing Reduction Step-Down Program" per: Operating Procedure 830.A as a "Intensive Management" Offender in September 2020.

4. In 2018, Harold Clarke was sued by VDOC prisoners for subjecting them to "Solitary Confinement" conditions at SISP that were deemed "Unconstitutional" and violated prisoners Eighth Amendment to the U.S.C. and constituted "Deliberate Indifference" to prisoners by subjecting them to a "substantial risk of serious phychological and emotional harm" which risk was sufficient to meet the "Objective Prong" of the Dual Analysis test to satisfy "Deliberate Indiffience". see Porter V. Clarke, 923 F.3d 348 (4th cir. 2019), at SISP in HU-3A.

5. The fourth Circuit then went on to affirm the district Courts finding in that, the conditions in Porter id. and conditions "closely analougous" to those challenged posed a "substantial risk of phychological and emotional harm" id. at 361, at SISP. (Legal Duty)

6. These conditions were as followed:

i. Each prisoner housed in seperate cell; no inmates are housed in adjacent cells, each cell is 71 sq. ft., cells contain a bed, small desk and toilet/sink combined, a "window" 5 inches high by 41.5 inches long covered by wire mesh, each door made of solid steel w/ a tray slot bolted on the door that is locked shut w/ the exception of passing the prisoners food at meal time and collecting their meals, a rectangular inset "window" that is on the door (same size as "window" above);

ii. Prisoners only allowed one hour of outdoor recreation five days a week, a ten minute shower three days a week, outside recreation consisted of prisoners confined in individual enclosures w/ concrete floors, enclosed by a steel and wire mesh cage measured at 7.9 ft. wide by 20 ft. long and none of the enclosures had excersise equipment and none of the prisoners could simataneously use adjacent recreation enclosures; no contact visits except for family members in "extreme circumstances" once every six months, which the Warden could grant or deny, and non-contact visits on weekends and State holidays, denied any form of congregate recreation either indoor or outdoor, not allowed to eat meals out of cells, they could not participate in congregate religion or prison programming, no human interaction

other than the Officers doing thirty minute security checks and twice a day nurses doing a pill pass out, as they spent 23-24 (twenty three to twenty four) hours a day in their cells. id, at 353-54

7. However, Clarke "never stopped" the practice of the challenged conditions at SISP in HU-3A despite being ORDERED and "agreed" to not operate anything "closely analougous" to them (Breach of Duty).

8. In August 2021, I was transferred to SISP to be housed here for court proceedings in accordance to Operating Procedure's 830.A and 841.4 for VDOC. (Legal Duties explained below in Line 9 and Below)

9. Operating Procedure 841.4 Restorative Housing Units (RHU) states "Level S offenders in restorative housing in in excess of 90 Consecutive days (SM-Special Management) or 180 consecutive days (IM-Intensive Management) due to temporary transfer for medical, court, etc. must be provided adequate recreation, program services, and privileges in accordance with Red Onion State Prison/ Wallens Ridge State Prison local operating procedure addressing the Restorative Housing Reduction Step-Down Program" at IV. Procedures, E. Initial Assignment

to General Detention-Offender Classification Process, 9., pg#6 of 16.

10. When I arrived at SISP, I was a "IM-1" offender per: to "Local Operating Procedure 830.A Restorative Housing Reduction Step-Down Program (LOP 830-A) for Red Onion State Prisoner's classified as "Level S" under the personal Welfare of Joshua Branch (Branch), as my UM, Beth Cabell (Cabell), Kevin McCoy (McCoy), both as my Wardens, and Clarke as my Director, in which They all were aware of my placement at SISP, because Greensville County issued my transfer Order to the VDOC.

11. Upon my arrival at SISP, my medical records were sent w/ me and I immediately began verbally telling Branch, John Doe(s) on the Multi-Disciplinary Team (MDT), and Beth Cabell, that I was a "At-Risk" prisoner w/ a Mental Health Code (MHC) 2 (Mentally impaired) suffering from PTSD, Schizophrenia, Anti-Personality-Social Disorder (ASPD), along w/ all my diagnosis listed in line 2 infra., in which I wasn't even supposed to be in RHU at SISP conditions, "closely analorigous" to Solitary Confinement.

12. I was subjected to the following conditions as a

"At Risk" prisoner at SISP:

i. All of the same conditions listed in line 6., i., infra.

ii. I was only allowed outdoor recreation four hours "occassionally" which consisted of being confined in individual enclosures w/ concrete floors, enclosed by a steel and wire mesh cage, a ten minute shower three times a week (none of Saturdays and Sundays), the outside recreation cage measured 7.9 ft. wide by 20 ft. long and none of the enclosures had excercise equipment and none of the prisoners could simultaneously use adajacent recreation enclosures, no contact visits at all, nor non-contact visits at all, denied any form of congregatio recreation either indoor or outdoor, not allowed to eat meals out of cells, I couldn't participate in congregate religion or prison programming, no human interaction other than the officers doing bi-hourly security checks and twice a day nurses doing a pill pass out, and majority of between 20-24 hours per day is spent in my cell alone.

13. I stayed subjected to the conditions in line 12 infra, from August 2021 until the later part of

November 2021 at SISP before I was placed at Sussex 2 State Prison (S2SP) HU-3B as a "IM-2" prisoner per. LOP830.A and OP841.4.

14. On June 22, 2022, I was placed back at SISP under the personal Welfare again of all defendants in line 10. infra., as a "IM-2" prisoner per. LOP830.A and OP841.4, and was immediately subjected back to the "closely anologous" conditions of Solitary Confinement as a "Mentally ill" prisoner stated in line 12-infra., w/ the diabilities in Line 2 infra.

15. I immediately began accessing the "Operating Procedure 866.1 grievance procedure" (OP866.1) (Protected Conduct) and filed a written complaint on June 26, 2022 regarding my next phase per. LOP830.A, H., 1. which states "At two-years prior to release, level 5 and level 6 offenders will be diverted into the level 5/level 6 Reentry program from whatever point they may be in the step-down program" because my release date is June 24, 2024 (two years prior to release), against "VDOC Officials" which McCoy, Cabell, Clarke, Branch, John Doe(s) are labeled As employees personally responsible for my denial and stalled progression that was only approximately "two days"

delayed at that time, in which Branch responded on July 5, 2022 stating blanketly "RHU status."

16. Per. LOP830.A, H, 2., states "Each inmate diverted into the reentry path should have their assessments reviewed or updated to include COMPAS assessments (risk/needs, ATS) by the Unit Manager and the Building Management Committee. Additionally, a Pschological Self-Efficacy Evaluation may be completed which will help assess the inmate's level of self-reliance, considered an important factor in their reliability to accomplish the multitude of tasks facing them at re-entry. This Evaluation will be conducted by a Mental Health Psychology Associate and the results discussed with the Unit Manager and the Building Management Committee."

17. "Building Management Team" means "A Multi-disciplinary team comprised of Staff assigned to work in the housing unit that tracks, measures, and advances or lowers inmates to appropriate privilege levels based on established criteria. Members may consist of Unit Manager, Security Supervisors, Counselor, Officer, Mental Health and Investigator. Additional members can be included as needed." see LOP830.A, d. DEFINITIONS

18. On July 21, 2022, Branch and Assistant Warden T. Green, along w/ the HU-3 Building Management Committee (John Doe(s)), and T. Green said "Your not getting nothing" as Branch stated "Stop writing me up Carter, your really not going to get reentry now"; (Adverse Action).

19. I then begged and pleaded to be let out of "RHU" as a "SMI" prisoner "at risk" but Branch just laughed and said that McCoy and Cabell weren't having that especially after I wrote them up about not getting reentry and that I wasn't going to progress anymore pass IM-2 while at SISP.

20. Week after week, I would see McCoy, Branch, and Cabell along w/ the HU-3 Building Management Committee and would report to them every time I seen them that I was "SMI" and needed to be reclassified per. LOP830.A by my MDT to be released from RHU immediately because I was deteriating stalled in "IM-2 phase" (Causation), in addition to verbally and writting my SMI symptoms I experienced by the day increasing anxiety-paranoia-depression-Schizophrenia-PTSD-ASPD-Phycosis-attacks I

was having due to the "denied medical treatment" by McCoy, Cabell, Branch, and John Doe(s) at SISP for subjecting me to the "substantial risk of phychological and emotional harm" as a "at-risk MHC-2" prisoner in solitary confinement conditions.

21. "At-Risk" means "at a substantial risk of mental and psychological detieriation" at all times mentioned in this complaint as defined in "Operating Procedure's "720.2 Medical Screening, Classification, Levels of Care" and "730.1 Mental Health Services: Administration" in RHU (Solitary confinement) in the VDOC.

22. As the months pasted, I continued to report the retaliation by Branch, McCoy, and Cabell, "Stalling" me in the Step-Down Program as a "IM-2" (Causation) through the OP866.1 and making reports online accessing the "correspondance complaint" system online about SISP officials "denying me progress out of Segregation" in retaliation for reporting that "HU-3 Staff at SISP" was "denying me my reclassification to Reentry per LOP830.A at two-years prior to release" via the OP866.1 (grievance procedure) and have no way

Out of Segregation, deeming my segregation "Indefinite" in violation of my "procedural due process rights" in being subjected to Solitary confinement conditions and I have no way out of RHU due to McCoy, Cabell, and Branch' retaliatory "denial" of progression out of RHU per. to LOP830.A and im stalled as a "IM-2" and have been for 17(seventeen) months when the "ordinary" time spent in "IM-2" is six months. (Causation)

23. I have been delayed-stalled in progressing out to society per. LOP830.A, H., 1., stated infra., line 15., approximately 7(seven) months past the "ordinary" time spent prior to being reclassified to "Reentry" (June 24, 2022) (Causation) by Branch, McCoy, and Cabell in retaliation for accessing OP866.1 reporting SISP "denial of reclassifying me to reentry status per. LOP830.A" and ive been subjected to the solitary conditions in line 12. infra., long-standing and w/o penological Justification suffering the "substantial risk of psychological and emotional harm" as a MHC-2 "SMI" prisoner at SISP, when im scheduled in CORIS for release on June 24, 2024, approximately 17(seventeen) months away.

24. Everytime I mentioned to my Building Committee (MDT), Branch, McCoy, Cabell, and John Doe(s), my MHC-2 and SMI diagnosis and need for adequate treatment for my disabilities stated in line 2, infra, they would "acknowledge" that I had these disabilities, but they "knowingly disregarded" giving me my treatment as a SMI prisoner, and left me in "RHU" to be at "grave risk" of "psychological and emotional harm"; throughout the time span mentioned in this complaint herein above between lines 1.-23. infra.

E. Exhaustion Of Administrative Remedies

1. I used all available remedies via OP866.1 to the highest extent regarding these claims of Solitary confinement as well as Procedural Due Process and Retaliation, as well, as Utilizing the Correspondance email system online when I was denied written complaint forms at times by SISP Officials attempting to deny me OP866.1 remedies and process.

F. Legal Claims

1. Plaintiff realleges paragraphs A.-F. and incorporates by reference.

2. Count I Deliberate Indiffrence

i. Cabell, McCoy, Branch, and John Doe(s), all acted w/ "Knowingly disregard" of my long-term detention in conditions amounting to "Solitary Confinement" (RHU) at SISP as a "SMI" prisoner w/ a MHC-2, subjecting me to the "substantial risk of psychological and emotional harm" of Solitary confinement and "Closely Analougous" conditions that were deemed unconstitutional already at the same prison, in the same pod, and constitutes "Deliberate Indiffrence" in violation of my Eighth Amendment to the U.S.C. as defined in Porter id. to be free from Cruel and Unusual Punishment.

ii. Clarke' "Knowledge of SISP, HU-3 Conditions in 3A pod" in 2018 that were deemed unconstitutional and in violation of prisoners Eighth Amendment to the U.S.C. to be free from Cruel and Unusual Punishment "personally" in Porter id. were "never changed" and I suffered (and still currently am) the challenged conditions id. of the "substantial risk of psychological and emotional harm" of RHU (solitary confinement analougous conditions) and constitutes "Supervisor Liability" in violation of my Eighth Amendment to the U.S.C. as defined in Hailey V. Red Onion State Prison, 2019 U.S. Dist. LEXIS 33353, at *10 (Citing Slakan V. Porter, 737 F.2d

368, 373 (4th cir. 1984)) to be free from Cruel and Unusual Punishment.

3. Count II Retaliation,

i. Cabell, McCoy, and Branch took "Adverse Action" by denying me progression out of Segregation and Stalling me in "IM-2" against LOP830.A for accessing OP866.1 (grievance procedure) and the Correspondance Email to report SISP-HU-3 Officials denial of my reclassification to Re-entry status per LOP830.A because I have "two-years" until release (Protected Conduct), in which "caused" me to not progress out of segregation and have been stalled in "IM-2" wrongly for 17 (seventeen) months (When per. LOP830.A I was supposed to be reclassified on June 24, 2022 (two-years prior to release) which constitutes "retaliation" in violation of my First Amendment to the U.S.C. as defined in Martin V. Duffy, 2020 WL 6038674 (4th cir. Oct. 13, 2020) (stating Stalling in Step-Down as Adverse retaliatory action); Also see Booker V. S.C. Dep't. Of Corr., 855 F.3d 533, 545 (4th cir. 2017) (stating that the "prison grievance" procedure is Protected under the First Amendment)

G. Prayer for Relief

1. Plaintiff has no plain, adequate, or complete remedy at

law to redress the wrongs directed and described herein to the responsible parties herein. Plaintiff has been, and will continually be irraparably injured by defendants conduct unless this court grants the declatory and injunctive relief which plaintiff seeks from defendants.

2. WHEREFORE, plaintiff Benjamin Carter #1591524 respectfully prays that this court enter judgement:

3. GRANTING plaintiff Benjamin Carter #1591524 a declaration that all acts and omissions described herein violate his rights under the United States Constitution.

4. A preliminary and permenent Injunction ordering Clarke, Cabell, McCoy, Branch to immediately:

i. Reclassify plaintiff Benjamin Carter #1591524 to Level 6 Reentry status pursuant to Local Operating Procedure 830.A Restorative Housing Reduction Step-Down Program, H., I. for Offenders at two-years prior to release with his state created liberty Intrest in accordance with such Operating Procedure.

ii. Release from level Segregation (RHU) as a MHC-2 prisoner "at risk";

5. Nominal Damages in the amount of:
 i. $1.00 Harold Clarke
 ii. $1.00 Beth Cabell
 iii. $1.00 Joshua Branch
 iv. $1.00 Kevin McCoy
 v. $1.00 John Doe(s) each seperately

6. Punitive Damages in the amount of:
 i. $20,000.00 Harold Clarke
 ii. $20,000.00 Beth Cabell
 iii. $20,000.00 Joshua Branch
 iv. $20,000.00 Kevin McCoy
 v. $20,000.00 John Doe(s) each Seperately

7. Compensatory Damages in the amount of:
 i. $100,000.00 jointly and Severally against Clarke, McCoy, Cabell, and Branch.

8. A Jury Trial on all issues triable by Jury,

9. All plaintiff's costs in this suit,

10. All Attorney Fee's in this suit deemed reasonable,

11. Any Additional relief this court deems just, proper, and equitable.

H. Verification

1. I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except to the matters alleged on information and belief, and, as to those, I believe them to be true. I verify under penalty of perjury that the foregoing is True and Correct.

Respectfully Submitted,
Benjamin Carter #1591524
Ben Carter
Sussex I State Prison
24414 Musselwhite Drive
Waverly, VA, 23891
January 10, 2023