UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BENJAMIN CARTER,
    *Plaintiff*,

v.                                1:22-cv-1160-MSN-WEF

BETH CABELL, *et al.*,
    *Defendants*.

MEMORANDUM OPINION AND ORDER

    This is a civil rights action filed under 42 U.S.C. § 1983 by plaintiff Benjamin Carter, a Virginia state prisoner proceeding *pro se*. The matter is before the Court upon opposing motions for summary judgment—one filed by defendants Beth Cabell, Joshua Branch, Kevin McCoy, and the Commonwealth of Virginia (ECF 37), and a second filed by plaintiff (ECF 40). Defendants' motion argues that (1) plaintiff failed to exhaust administrative remedies before filing suit, warranting dismissal of this action, and (2) even if plaintiff had exhausted his claims, the operative pleading fails in part to state a claim for relief. ECF 38. Plaintiff's motion accuses defendants of failing to oppose the arguments and factual contentions identified in his amended complaint. ECF 41.

    The Court has reviewed the pending motions and, for the reasons explained below, the defendants' motion will be granted, the plaintiff's motion will be denied, and this matter will be dismissed.

## I. Procedural History

Plaintiff asserts that defendants Beth Cabell, Joshua Branch, and Kevin McCoy[1]—each of whom is an official at Sussex I State Prison ("SISP")—violated his rights under the First and Eighth Amendments by placing him in restrictive housing and failing to permit him to participate in re-entry programming ahead of his scheduled release date. *See* ECF 1, 16, 37, 38. Plaintiff also seeks relief from the Commonwealth of Virginia, apparently under a *respondeat superior* theory. *See* ECF 16 at 3 ("Commonwealth of Virginia is legally responsible for the Negligent acts done by the VDOC employees that are mentioned herein.").

Defendants argue in their motion for summary judgment that plaintiff failed to exhaust administrative remedies before filing suit; that the operative complaint fails to state a viable First Amendment retaliation claim; and that plaintiff's claims against the Commonwealth of Virginia must be dismissed pursuant to the Eleventh Amendment. ECF 38. Plaintiff's motion, meanwhile, raises something resembling an argument for default judgment, asserting that defendants have failed to oppose the claims raised in his amended complaint. ECF 41.

## II. Plaintiff's Motion for Summary Judgment

The Court first turns to plaintiff's motion for summary judgment. Plaintiff's "Memorandum of Law in Support of Motion for Summary Judgment" (ECF 41) begins with a heading reading, "Undisputed Facts that are Material." *Id.* at 1. It then lists twenty-three lower-case Roman numerals that fail to provide any information or argument and do not contain any cites to the record. *Id.* at 1-2. The memorandum then invokes legal precedent tenuously related to the

---

[1] The complaint also named several John Doe defendants who plaintiff later identified. *See* ECF 1, 31, 32. As explained in this opinion, plaintiff failed to exhaust his administrative remedies before filing this action. Because this action will be dismissed, the Court declines to issue service on these newly identified defendants.

issues at hand and suggests that "Defendants haven't opposed the facts presented in any way, shape, or form as to the asserted claims."[2] *Id.* at 4. The memorandum concludes with plaintiff's request that he be granted declaratory and injunctive relief, as well as roughly $160,000 in monetary damages. *Id.* at 7.

Defendants request that the Court deny plaintiff's motion for summary judgment, arguing that it "fails to comply with the Federal Rules of Civil Procedure; is not adequately supported by record evidence, and fails to comply with this Court's Local Rules." *See* ECF 45 at 1. The Court agrees.

Rule 56 of the Federal Rules of Civil Procedure makes clear that a party moving for summary judgment must identify facts he believes to be disputed or undisputed and to "cit[e] to particular parts of materials in the record" to support his position. *See* Fed. R. Civ. P. 56(c)(1). This Court's Local Rules, meanwhile, require parties to provide "a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." Local Civ. R. 56(B).

In failing to identify any facts whatsoever, plaintiff has submitted a motion that does not comply with the Federal Rules of Civil Procedure and this Court's Local Civil Rules. Consequently, the motion will be denied. *Cf. Duran v. Hoover*, No. 3:19cv930-HEH, 2022 WL 21853306, at *1 (E.D. Va. June 16, 2022) (denying *pro se* prisoner-drafted motion for summary judgment on basis that it failed to include statement of facts and citations to the record and

---

[2] In making this argument, plaintiff apparently ignores the fact that defendants have filed an answer that addresses his arguments. *See* ECF 36.

3

therefore failed to comply with the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Eastern District of Virginia).

### III.     Defendants' Motion for Summary Judgment

The Court next addresses defendants' motion, which requires two separate analyses. First, the Court will address defendants' failure to exhaust theory, applying the rules governing motions for summary judgment in the process. Second, the Court will assess defendants' arguments that the operative pleading fails, in part, to state a viable claim for relief.

####     A.      Standard of Review

As observed above, defendants assert that they are owed judgment in their favor due to plaintiff's failure to exhaust administrative remedies and that the operative pleading in this action fails to state a First Amendment Retaliation Claim or a claim against the Commonwealth of Virginia. Defendants' exhaustion argument requires the Court to look to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

Defendants' arguments regarding plaintiff's First Amendment retaliation claim and claim against the Commonwealth of Virginia—although raised in the context of a motion for summary judgment—effectively require the Court to conduct a Rule 12(b)(6) analysis. A Rule 12(b)(6)

motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). A complaint must therefore allege specific facts in support of each element of each claim a plaintiff raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Iqbal*, 566 U.S. at 678.

### B.  Exhaustion

The Court first addresses defendants' exhaustion argument. With respect to this argument, the following facts are undisputed.

#### 1.  Undisputed Facts

Plaintiff is a prisoner in the custody of the Virginia Department of Corrections ("VDOC") who was transferred from Red Onion State Prison to SISP in August 2021. ECF 16 at 6. As a VDOC inmate, plaintiff was subject to the requirements of VDOC Operating Procedure ("OP") 866.1, which sets forth the administrative procedure for offenders to resolve complaints and appeal administrative decisions. ECF 38-2 ("Billups Aff.") at 1, ¶ 4. All issues a prisoner may wish to raise—with the exception of those pertaining to policies, procedures, and decisions of the Virginia

5

Parole Board; disciplinary hearings; state and federal court decisions; laws and regulations; and matters beyond the control of the VDOC—are grievable under OP 866.1. *Id.* at 2, ¶ 5.

The VDOC's grievance process first requires an offender to make a good faith effort to resolve his complaint in an informal manner. *Id.* at ¶ 6. He may do so by submitting an informal complaint to the grievance department, which is then tasked with forwarding the document to the appropriate department head. *Id.* Prison staff should respond to an informal complaint within fifteen calendar days of receipt. *Id.* If the offender is dissatisfied with the outcome of the informal process, he must submit a regular grievance within thirty days of the incident underlying the grievance. *Id.*

Regular grievances that do not comply with the requirements of OP 866.1 are, per policy, returned to inmates within two days of their receipt and must list the reason for their rejection. *Id.* at ¶ 7. A regular grievance may be rejected if it raises more than one issue, is filed after the filing period has expired, is duplicative of another grievance, contains insufficient information, or constitutes a mere "request for services." *Id.* If a regular grievance is rejected at intake, an inmate may request review of the rejection from a Regional Ombudsman, who will either agree with the reasons for the grievance's rejection or overturn the rejection and accept the grievance into the intake process for consideration of its merits. *Id.* Appealing an intake rejection does not satisfy the exhaustion requirement. *Id.*

If a regular grievance is accepted during the intake process, a Level I review is conducted by the Warden or Superintendent of the prison at which the grievance was filed. *Id.* at 3, ¶ 8. If the offender is dissatisfied with the Level I response, he must appeal that decision to regional administrators within the VDOC, who provide a "Level II" response. *Id.* Although a third

grievance level exists, Level II represents the highest level of review available for most issues. *Id.* Only once an inmate has appealed his grievance through the highest available level of review has he fully exhausted administrative remedies as to his claim. *Id.* at 2, ¶ 6.

Upon plaintiff's arrival to SISP, he was housed in the restricted housing unit, or RHU. ECF 16 at 7. In that unit, plaintiff was subjected to conditions he claims were "closely analogous to solitary confinement." *Id.* Plaintiff was transferred to Sussex II State Prison in November 2021 but later, on June 22, 2022, returned to SISP. *Id.* at 8-9. At that time, plaintiff claims to have been subjected to the same conditions he had faced before his temporary move to Sussex II. *Id.* at 9.

*(1) Informal Complaint: Reclassification (submitted June 26, 2022)*

At the time plaintiff returned to SISP, he was scheduled to be released from incarceration on June 24, 2024.[3] *Id.* He claims that, pursuant to the VDOC's "Step-Down Program," inmates two years from release should be reclassified into a "reentry program from whatever point they may be in the [] program." *Id.* Plaintiff therefore "filed a written complaint on June 26, 2022," seeking to be reclassified. *Id.* Defendant Branch responded to the complaint by merely writing, "RHU status." ECF 16-1 at 7. There is no record of a grievance being filed on the basis of his classification.

*(2) Grievance: PREA (exhausted July 13, 2022)*

Separately, on an unknown date, plaintiff filed a grievance to which defendant McCoy issued a Level I response on June 29, 2022. ECF 1-1 at 2. The response did not summarize the allegations in plaintiff's underlying grievance but indicated that the nature of the grievance had

---

[3] According to the VDOC's online "Inmate Locator," plaintiff is now set to be released on September 17, 2024. *See* INMATE LOCATOR, https://vadoc.virginia.gov/general-public/inmate-locator/ (last accessed March 29, 2024).

been related to "PREA," or the Prison Rape Elimination Act, and stated that, pursuant to OP 866.1, inmates were not required to use the written complaint process to report any alleged incidents of sexual abuse.[4] *Id.* The response also indicated that an investigation was ongoing and that "fraternization or sexual misconduct" by prison employees would not be tolerated. *Id.* On July 13, 2022, Regional Administrator Leslie Fleming issued a Level II response related to plaintiff's PREA grievance. *See* ECF 1-1 at 3. This second response confirmed that an investigation was ongoing and informed plaintiff that he had "exhausted all administrative remedies" as to his PREA complaint. *Id.* Plaintiff does not dispute that this grievance is unrelated to the claims raised in the complaint before this Court.

*(3) Grievance: Retaliation (filed September 22, 2022)*

On August 30, 2022, plaintiff filed another written complaint, this time claiming that he was being subjected to retaliation. *See* ECF 16-1 at 6. He followed this complaint with a regular grievance, which he submitted on September 22, 2022. *Id.* at 5. Although it is not clear what precise response plaintiff received as to this grievance, it is clear from the document that plaintiff attempted to appeal the issue and that the Regional Ombudsman—the responsible official for issuing a Level II response to such an appeal—did not receive the document until October 19, 2022, when it was stamped upon its intake. *Id.*

*(4) Grievance: Conditions of Confinement (filing attempted September 28, 2022)*

On September 12, 2022, plaintiff filed another informal complaint, this time regarding the conditions of his confinement, which he asserted were unconstitutional and caused him emotional

---

[4] Because the Level I response does not provide the factual allegations levied in the grievance, the precise facts or claims that plaintiff sought to exhaust through that grievance are unknown to the Court; however, plaintiff does not dispute that the grievance in response to which the Level I response was issued was related to PREA and not the claims raised in this action, i.e. the conditions of his confinement and alleged First Amendment retaliation.

8

distress. Billups Aff. at 4, ¶ 11. On September 21, 2022, defendant Branch responded, stating "There is no difference in conditions from other RHU pods." *Id.* On September 28, 2022, plaintiff attempted to file a regular grievance regarding his conditions of confinement. *Id.* at ¶ 12. Officials rejected the grievance upon its intake the next day, advising plaintiff that the information he had provided was inadequate and that he needed to describe specifically what had occurred and on what date. *Id.* Although plaintiff did not file a new grievance to rectify this error, he did appeal the grievance's intake rejection. *Id.* The Regional Ombudsman upheld the intake decision on October 11, 2022. *Id.*

*(5) Informal Complaint: Conditions of Confinement (submitted December 7, 2022)*

On December 7, 2022, plaintiff filed another informal complaint, again stating that his mental health was suffering due to his conditions of confinement. *Id.* at ¶ 13. He specifically claimed that he was being denied showers and out-of-cell activities. *Id.* On December 21, 2022, defendant Branch responded, writing, "Every inmate in RHU is offered showers 3 times weekly per policy. All refusals are documented on your individual logsheet." *Id.* Plaintiff did not file a related regular grievance after filing this informal complaint.

Plaintiff executed the complaint foundational to this action on September 30, 2022. *See* ECF 1 at 12. The Court received and docketed the complaint on October 12, 2022.

    **2.**    **Analysis**

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions" under 42 U.S.C. § 1983 "or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). The statute's exhaustion requirement is strict and was

9

enacted with the intent to "reduce the quantity and improve the quality of prisoner suits." *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). A prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action. *See Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016); *French v. Warden*, 442 F. App'x 845, 846 (4th Cir. 2011). Consequently, a plaintiff cannot cure an original failure to exhaust administrative remedies by exhausting administrative remedies after the action was filed and later filing an amended complaint. *See, e.g.*, *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002). Where a prisoner fails to properly exhaust available administrative remedies before filing suit, dismissal is mandatory. *Ross v. Blake*, 578 U.S. 632, 638 (2016).

Here, it is undisputed that plaintiff filed a host of informal complaints and grievances regarding issues he claims to have faced at SISP, including an alleged incident related to some form of sexual impropriety, the conditions of his confinement, and alleged First Amendment retaliation; however, it is similarly undisputed that plaintiff failed to fully exhaust these issues before filing this action.[5] Indeed, although plaintiff arguably exhausted some of the relevant grievances eventually, it was not until after the September 30, 2022, filing of his complaint. Plaintiff admits as much in his opposition to defendants' motion for summary judgment, where he writes, "The administrative process was completed successfully in total by October 25, 2022" and that he "filed [his] grievances prior to this amended complaint being filed." ECF 42 at 3.

As indicated above, plaintiff's belief that his filing of an amended complaint after his successful exhaustion of administrative remedies salvages his claims is mistaken. *See Hardin v. Hunt*, No. 21-7195, 2023 WL 3969989, at *3 (4th Cir. June 13, 2023) (concluding that a plaintiff's

---

[5] This is not true of the sexual misconduct claim, which plaintiff did appear to exhaust but is not at issue in this action.

"noncompliance with the PLRA's exhaustion requirement cannot be 'cured' by amendment under Rule 15" and that "[t]he only 'cure' for failure to exhaust in the PLRA context is the filing of a new action once exhaustion is complete"); *Martinez v. United States*, No. 5:14-0102, 2016 WL 11483866, at *6 (S.D. W. Va. Jan. 19, 2016) ("Although Plaintiff filed an Amended Complaint on May 27, 2014, which asserted nearly identical allegations as his initial Complaint, such an amendment does not cure his failure to exhaust prior to filing suit.").

Because the record makes clear that plaintiff did not exhaust his claims before filing this suit, the Court will dismiss this action without prejudice.

### C. Failure to State a Claim

Defendants next assert that, even if plaintiff had satisfactorily exhausted his claims, that the amended complaint fails to state a viable First Amendment retaliation claim and that the Eleventh Amendment bars plaintiff from suing the Commonwealth of Virginia. The Court finds that the amended complaint adequately states a First Amendment retaliation claim against defendant Branch but concludes that the pleading fails to state a claim for relief against the remaining defendants. These findings constitute alternative bases for dismissal of the First Amendment retaliation claims against defendants McCoy and Cabell and any claim raised against the Commonwealth of Virginia.

#### 1. First Amendment Retaliation

With respect to plaintiff's retaliation claim, the amended complaint alleges plaintiff was transferred from Red Onion State Prison to SISP in August 2021. ECF 16 at 6. Upon his arrival, plaintiff allegedly "began verbally telling [defendant] Branch … and Beth Cabell that [he] was a[n] 'at-risk' prisoner w[ith] a Mental Health Code … suffering from PTSD, Schizophrenia, Anti-

11

Personality-Social Disorder" and more. *Id.* at 7. Despite struggles with his mental health, plaintiff was subjected to conditions he claims were unconstitutional and contrary to VDOC Operating Procedures. *Id.* at 7-9. On June 26, 2022—two years before his scheduled release from incarceration—plaintiff utilized the facility's grievance procedure to complain about his conditions of confinement and to express that, in line with VDOC policy, he was entitled to be reclassified into the re-entry program at that time. *Id.* at 9. Defendant Branch allegedly denied the complaint and informed plaintiff that he would continue to be held in "RHU status." *Id.* at 10.

The amended complaint next alleges that, on July 21, 2022, at an unstated time and unknown location, defendant Branch and nonparty T. Green told plaintiff to "stop writing [them] up" and that plaintiff was "really not going to get re-entry [status] now." *Id.* at 11. This pattern continued when Branch told plaintiff that defendants McCoy and Cabell would not approve his re-entry status "especially after [plaintiff] wrote them up." *Id.* "Week after week," the amended complaint asserts, plaintiff "would see McCoy, Branch, and Cabell along w[ith] the HU-3 Building Management Committee and would report to them every time … that [he] … needed to be reclassified" consistent with VDOC Operating Procedures. *Id.*

To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020).

The Court concludes that the amended complaint states a First Amendment retaliation claim against defendant Branch but not defendants Cabell or McCoy. First, plaintiff's filing of internal grievances satisfies the first element of the retaliation test just described. *See Martin v.*

12

*Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated."). Next, defendant Branch's decision to deny plaintiff's grievance—which effectively constituted a decision to keep plaintiff confined under conditions more severe than allegedly permitted by VDOC procedures—could well constitute an adverse action.[6] *Cf. Rheaume v. Pallito*, No. 2:15-cv-135-WKS-JMC, 2016 WL 3277318, at *10 (D. Vt. Apr. 20, 2016) (opining that "the withholding of sex offender programming—even though not a constitutionally protected liberty interest, as discussed above—could constitute an adverse action" for the purposes of a First Amendment retaliation claim). Finally, in alleging that Branch told plaintiff to stop "writing [him] up" and stated that plaintiff was "really not going to get reentry now," *see* ECF 16 at 11, the amended complaint satisfies the causation element of the First Amendment retaliation test.

Importantly, the allegations identified above do not implicate defendants McCoy or Cabell; they do not establish that these defendants had any knowledge of plaintiff's grievances or that they did more than interact with plaintiff in passing. Consequently, the Court will dismiss plaintiff's First Amendment retaliation claim against McCoy and Cabell.

---

[6] Defendants argue that their actions did not chill plaintiff's exercising of his First Amendment rights and therefore did not constitute adverse action. ECF 38 at 15. Without question, plaintiff is a prolific litigator who admits in this action that he continued to file grievances in the aftermath of the events described in the amended complaint. *See, e.g.*, ECF 16 at 12. But the *subjective* impact of an action on one individual merely "provides some evidence" of whether that action *objectively* satisfies the "adverse action" element of a First Amendment retaliation claim. *See Thompson v. Clarke*, No. 7:17-cv-10, 2020 WL 1124361, at *3 (E.D. Va. Mar. 6, 2020). The Court believes that the denial of access to reentry programming—although itself not constitutionally guaranteed—could "deter a person of ordinary firmness from the exercise of First Amendment rights." *See Martin*, 858 F.3d at 249.

### 2. Claim Against Commonwealth of Virginia

Plaintiff's claim against the Commonwealth of Virginia requires far less discussion. This is so because the Eleventh Amendment shields the Commonwealth from suit. *See Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994) ("The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals.").

Even to the extent the Eleventh Amendment did not protect the Commonwealth, it is clear that plaintiff would not be entitled to relief under his presented theory, which apparently relies on the doctrine of *respondeat superior*. *See* ECF 16 at 3 ("Commonwealth of Virginia is legally responsible for the Negligent acts done by the VDOC employees that are mentioned herein."). Indeed, claims raised under 42 U.S.C. § 1983 must be predicated on direct, personal liability of a defendant, and it is well settled that "[t]here is no *respondeat superior* liability under § 1983." *Johnson v. Potomac Highlands Reg'l Jail*, No. 5:06CV1, 2007 WL 1258879, at *2 (N.D.W. Va. Apr. 30, 2007). In other words, "§ 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002). For these reasons, the Court concludes that plaintiff's claim against the Commonwealth of Virginia must be dismissed.

### IV. Other Pending Motions

Two additional motions remain pending: plaintiff's Motion to Satisfy Fines and Costs through Community Service (ECF 52) and defense counsel's Motion to Withdraw as Attorney (ECF 55). Plaintiff's motion will be denied. Defense counsel's will be granted.

In his motion, plaintiff suggests that § 19.2-354 of the Virginia Code envisions a prisoner's ability to pay court costs through community service. ECF 52 at 1. Plaintiff also suggests that the Court's granting of the instant motion would help him "to becom[e] a productive and law-abiding member of the community." *Id.* at 4. But because plaintiff has filed this action in a federal district court, the state law provisions plaintiff cites are not controlling. Instead, when plaintiff applied for *in forma pauperis* ("IFP") status, plaintiff became bound by a *federal* law—namely 28 U.S.C. § 1915(b)(2). This statute makes clear that a prisoner proceeding IFP must satisfy his debts through monthly monetary payments; it makes no mention of alternative methods of debt repayment or cancelation. *See* 28 U.S.C. § 1915(b)(2) ("[T]he prisoner shall be required to make monthly payments … until the filing fees are paid."). Plaintiff cannot claim not to have been on notice of this statutory scheme, as he was provided a Court-issued Consent Form which clearly described the statute's requirements. *See* ECF 10. Accordingly, plaintiff's motion will be denied.

Defense counsel Laura Maughan—whose successor, Debra Marie Bryan, has already noted an appearance in this action—will be excused.

## V. Conclusion and Order

For the reasons stated above, it is hereby

ORDERED that defendants' Motion for Summary Judgment (ECF 37) and defense counsel's Motion to Withdraw as Attorney (ECF 55) are GRANTED; and it is further

ORDERED that plaintiff's Motion for Summary Judgment (ECF 40) and Motion to Satisfy Fines and Costs Through Community Service (ECF 52) are DENIED, and it is further

ORDERED that plaintiff's First Amendment retaliation claims against defendants Cabell and McCoy and all claims against the Commonwealth of Virginia are DISMISSED WITH PREJUDICE; and it is further

ORDERED that plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE for failure to exhaust.

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until directed to do so by the appellate court.  Failure to file a timely NOA waives the right to appeal this Order.

The Clerk is directed to send a copy of this Order to plaintiff Benjamin Carter, *pro se*, and to counsel of record for defendants and to close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

March 29, 2024
Alexandria, Virginia